. THEODORE GRIESS V. STATE OF NEBRASKA.

FILED JANUARY 4, 1929. No. 26387.

*Mullen & Morrissey, Waring & Waring* and *C. L. Stewart,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Lloyd Dort, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON and HOWELL, JJ., and REDICK, District Judge.

HOWELL, J.

Plaintiff in error brings this case to us from the district court for Clay county, wherein he was convicted, on counts one and two, of embezzlement, abstraction and wilful misapplication of $2,773.63 and $2,932, respectively, funds of Nebraska State Bank of Harvard, of which he was president.

Errors assigned are seven in number, but we will mention only the following: (1) Denying a continuance; (2) admitting evidence concerning books and records of the Omaha National Bank, not present in court; and (3) error in giving paragraph No. 4 of the instructions. In view of our conclusions, it is not necessary to pass upon the correctness of the ruling of the court denying plaintiff's application for a continuance.

Since this case is to be remanded for another trial, we do so with the mere admonition that it may be well to

obviate the criticisms of counsel for plaintiff in error as to testimony concerning what the records of Omaha National Bank do or do not disclose. However, we suggest that there may be a distinction between a negative showing that certain papers (not numerous), touching a subject, do not show a certain fact or recital and that no such documents exist.

Paragraph 4 of the instructions, criticised, presents a boundary line question. It reads:

"The evidence in this case is somewhat involved covering many different transactions, records and entries of accounts. The particular things, however, upon which the charge is based are not so complicated or difficult to understand, and I will explain to you somewhat the theory upon which both the prosecution and defense have presented their sides of the case.

"The charge made by the first count of the information is in reference to the embezzlement, abstraction or wilful misapplication of the funds of the bank in an amount of $2,773.63, which, according to the theory of the prosecution, was made up of two certain items of $773.63 and $2,000, respectively, which it is claimed the defendant obtained by crediting the same in the books of the bank $773.63 in his own personal account and $2,000 in the account of Griess & Thomas, and that the defendant did not at the time put in any moneys, bills of exchange or funds of any kind for such credit, so that he thereby effected a disposition of the moneys and funds of the bank which he afterwards checked out from the two accounts for his own use and benefit.

"In the second count the charge is based upon transactions whereby it is claimed the defendant issued five certain checks in the amounts of $800, $410, $500, $510, and $712, respectively, the aggregate amounting to $2,932, which he put in circulation, and afterwards, when in the course of business they were returned to the bank for payment, he caused them to be paid from the funds of the bank by means of a draft issued therefor which included

the total amount of said checks and also other items of exchange making the total of the draft in which it is claimed payment of these checks was included the sum of $7,010.13.

"The foregoing are the particular items upon which the charges are based in this case. The other items and transactions referred to in the evidence are claimed on the part of the state to be transactions made for the purpose of carrying on or covering up or concealing the original misapplication of the funds occasioned by the transactions first above referred to and are to be considered by you only in so far as they may throw light upon the character, quality and purpose of the transactions themselves.

"The defendant relies upon his plea of not guilty and his claim that the evidence introduced on behalf of the state is not sufficient to authorize his conviction upon either offense charged. The defendant did not testify in his own behalf, and you are instructed that, although the statute of this state provides that a person charged with a crime may testify in his own behalf, yet he is not under any obligation to do so, and the statute also expressly declares that his neglect to do so shall not create any presumption against him."

After having stated to the jury that the evidence is somewhat involved, the court said: "The particular things, however, upon which the charge is based are not so complicated or difficult to understand, and I will explain to you somewhat the theory upon which both the prosecution and defense have presented their sides of the case." There is a monitory tinge, molecular it is true, in the words of the court, which tends to indicate a warning that, while there is an involvement, yet it must not be regarded as troublesome, since the particular things charged against the defendant are not complicated or difficult to understand. The court then definitely explained that two specific items, testified to as to count one, made up the embezzled item charged, according to the theory of the prosecution. The same was repeated as to count two, only

five items were called to the attention of the jury instead of two. The court then states, "The foregoing are the *particular items upon which the charges are based*" (italics ours), thus directing the minds of the jury to such items only, to the exclusion of all others shown in the books, records and deposit slips in evidence.

Standing alone, it may be doubted whether the province of the jury was invaded. The jury were then told, in effect, now that you know what items to consider, "the defendant relies (for an acquittal) upon *his plea of not guilty* and his claim that the evidence introduced *on behalf of the state* is not sufficient to authorize his conviction." (Italics ours.)

In this state, the presumption of innocence, afforded one charged with crime, rises to the dignity of evidence and follows him throughout the trial. The effect of the charge was to tell the jury the defendant relied upon the insufficiency of the state's evidence alone, and his plea of not guilty, and not upon the evidence of presumed innocence with which the law supplied him. In effect, the law produces evidence of innocence on behalf of every accused person put upon trial for crime, which evidence must be weighed fairly by the jury and overcome by other evidence to the point that his guilt has been proved beyond a reasonable doubt. The instruction effectually wasted that presumption, or evidence, to the prejudice of defendant, as if it applied to a witness on the stand, testifying in his behalf. The subsequent instruction, that "the defendant is presumed to be innocent * * * until he has by sufficient evidence been proved to be guilty; and it is the duty of the jury to give the defendant the full benefit of this presumption as evidence in his favor," etc., does not cure the painful statement that "the defendant relies upon his plea," etc., to escape his dilemma.

Taking the case as a whole, we have been impressed with the words of the learned trial judge: "I cannot get from the history of this case as it comes to me any venal quality in the acts of the defendant," although we do not

lodge a reversal on that language. At oral argument, some time was spent on the meaning of "venal." It may very well be said to mean dishonesty, infidelity, faithlessness, perfidy, treachery, unfairness, baseness, turpitude, rascality, and improbity, and we would hesitate to believe that it excludes embezzlement. We are also inclined to say that the instruction complained of is too argumentative.

For the reasons indicated, the judgment of the district court is

REVERSED.